UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEREK SWORD,               ) | CIVIL ACTION |
|     Plaintiff                      ) | COMPLAINT |
|                             ) | |
| v.                                 ) | |
|                             ) | JURY TRIAL DEMANDED |
| THE BARBERINO BROTHERS, INC.   ) | |
|     Defendant                 ) | |
|                             ) | NOVEMBER 12, 2014 |

## COMPLAINT

1.  This is a suit brought by a consumer regarding the purchase and sale of a motor vehicle (the "Vehicle") pursuant to a retail installment sales contract (the "Contract").  Plaintiff brings this action to recover actual damages, statutory damages, punitive damages, reasonable attorney's fees and costs from defendant Barberino Brothers, Inc. ("Barberino"). The Plaintiff claims that Barberino has violated the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

2.  Plaintiff, Derek Sword, is a natural person residing in Middletown, Connecticut.

3.  Defendant, Barberino, is a domestic corporation that operates an automobile dealership in Wallingford, Connecticut.

4.  Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1693m, and 28 U.S.C. § 1331.

5. This court has jurisdiction over Barberino because it is incorporated in this state and regularly conducts business in this state.

6. Venue in this court is proper because Plaintiff resides in Connecticut and the claims involve a transaction that occurred in Connecticut.

7. On April 15, 2014, Sword visited Barberino to explore the purchase of a motor vehicle.

8. Plaintiff owned a 2008 GMC Sierra 1500 (the "Trade-In"), and Barberino told Plaintiff that it would allow him $9,000 for the Trade-In.

9. This allowance was comparable to the amount that Plaintiff had been offered for the Trade-In at other dealerships and was approximately equal to the NADA trade-in value.

10. Plaintiff completed a credit application and was told that he would qualify to purchase either a new Nissan Sentra or a new Nissan Versa.

11. The salesman involved in the transaction, Greg West, showed Plaintiff a new 2014 Nissan Sentra (the "Vehicle") on the lot.

12. The Vehicle had the new car sticker, known as a Monroney sticker, displayed on the vehicle.

13. The Monroney sticker showed that the Manufacturer's Suggested Retail Base Price for the Vehicle was $18,690, that the Vehicle had options included by Nissan that had a price of $2,105, and that there was a destination charge of $810, leaving the total price (excluding dealer installed options and accessories, local taxes or license fees) of $21,605.

14. The Vehicle did not contain any other stickers or signs indicating that the price of the Vehicle was anything other than the sticker price of $21,605.

15. Greg West did not tell Plaintiff that Barberino was asking for some price other than the sticker price for the Vehicle.

16. Plaintiff decided to purchase the Vehicle.

17. Greg West informed Plaintiff that he was required to purchase an extended service contract in order to be approved for financing to purchase the Vehicle.

18. This requirement was imposed upon Plaintiff by Barberino on its own initiative, and it was not required by Nissan Motor Acceptance Corp. ("NMAC"), who had agreed to accept assignment of the retail installment contract.

19. The finance manager involved in the transaction, Jason Napoletano, prepared a purchase order and a retail installment contract (the "Contract") for the purchase of the Vehicle.

20. The purchase order and the Contract utilized a cash price of $25,079.90 for the Vehicle, an amount that was $3,474.90 greater than the sticker price displayed on the Vehicle.

21. The purchase order and the Contract also included a service contract at a cost of $3,200.

22. Jason Napoletano informed Plaintiff that he was required to enter into an arrangement with a third party vendor known as SMART Payment Plan whereby money would be automatically debited from his checking account and then paid to NMAC.

23. Plaintiff was required to make a payment of $399 to enroll in the SMART Payment plan fee and is required to make weekly payments of $1.95.

3

24. Plaintiff receives no benefit from the SMART Payment Plan that he would not be able to realize himself by paying NMAC in advance of the scheduled payment dates under the Contract.

25. Napoletano prevented Plaintiff from discovering that he had overpaid for the Vehicle by rushing him through the signing of the contract documents and directing him to "sign here, here, and here."

26. Later, after returning home, Plaintiff reviewed his papers and realized that he had been overcharged for the Vehicle.

27. Plaintiff confronted Napoletano, who told him that part of the additional cost was a "bank fee" of $2,500 and that they had given him only $6,500 for the Trade-In, and Barberino had written the contract up with a higher sales price in order to save Plaintiff sales tax.

28. This was a fraudulent and deceptive statement, because, on information and belief, NMAC did not charge any fee for accepting assignment of the Contract and, if it did charge a fee, it was substantially less than $2,500. Additionally Connecticut assesses sales tax based upon the net difference between the purchase price of the new vehicle and the trade-in allowance on the trade-in, so there would be no tax savings realized by manipulating the cost of the Value and the allowance for the Trade-In.

29. Barberino committed unfair trade practices in violation of CUTPA by charging more than the displayed sticker price for the Vehicle without alerting Plaintiff that it was charging more than sticker price.

30. Barberino further violated CUTPA by falsely and deceptively telling Plaintiff that he was required by NMAC to purchase the service contract and to enroll in the SMART Payment Plan and by its other fraudulent and deceptive statements described above.

31. Plaintiff has suffered an ascertainable loss due to Barberino's CUTPA violations in that he has paid more for the Vehicle than its true value, and the amount that he financed in the transaction is greater than the value of the vehicle, even though he provided a trade-in vehicle that was worth $9,000.

32. Barberino violated the EFTA, 15 U.S.C. § 1693k, by requiring Plaintiff to establish the SMART Payment account and to make payments for the Vehicle through preauthorized electronic transfers.

33. Barberino violated TILA, 15 U.S.C. § 1638, by failing to include the SMART Payment fees as a finance charge, by failing to include the cost of the service contract as a finance charge, and by failing to include any portion of the purchase price that was attributable to a bank fee as a finance charge.

WHEREFORE, Plaintiff seeks actual damages, punitive damages, and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g; actual damages, statutory damages and attorney's fees pursuant to 15 U.S.C. § 1693m, and actual damages, statutory damages, and attorney's fees pursuant to 15 U.S.C. § 1640.

          PLAINTIFF, DEREK SWORD,

By: /s/ Daniel S. Blinn
    Daniel S. Blinn, ct02188
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457
    dblinn@consumerlawgroup.com